```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF MARYLAND

FUNKY BROWN CHICK CORP.          *

            Plaintiff            *

         vs.                     *   CIVIL ACTION NO. MJG-08-3041

YESHA CALLAHAN                   *

            Defendant            *

*     *     *     *     *     *     *     *     *
```

## MEMORANDUM AND ORDER
## RE PRELIMINARY INJUNCTION

The Court has before it Plaintiff's Motion for Preliminary Injunction [Document 16] and the materials submitted by the parties relating thereto. The Court has held a hearing. The Court now issues this Memorandum and Order as its statement of reasons in compliance with Rule 65(d) of the Federal Rules of Civil Procedure.

## I.  BACKGROUND[1]

Plaintiff, Funky Brown Chick Corporation is assignee[2] of pertinent rights from Ms. Twanna Hines ("Hines"). In 2005, Hines first used the name "Funky Brown Chick," to identify her website on which she has posted commentaries about a variety of topics, "the majority relating to sex, dating and interpersonal relationships."

---

1 Since the parties are fully familiar with Plaintiff's allegations, the instant discussion is a brief one.
2 Since June 2009.

1

Hines Decl. ¶ 5.  Hines defines "her target audience as those interested in a young woman of color's somewhat more eclectic views on relationships, dating and other topics."  Hines Decl. ¶ 3. By September 2006, Hines used the domain name "funkybrownchick.com."

In late 2007, Hines became aware that Defendant Yesha Callahan ("Callahan") was using the name "Funky Black Chick" in connection a "weblog," or "blog," on the Internet.  Hines Decl. ¶ 56.  In April 2008, Callahan obtained, and thereafter used, the domain name "funkyblackchick.com."  After the commencement of the instant suit, in November 2008, Callahan began using the name "Funkge Blak Chik" and "fungkeblakchik.com" as a domain name for her blog.

By the instant motion, Plaintiff seeks a preliminary injunction preventing Callahan from using the name "Funky Black Chick," the domain name "funkyblackchick.com" or variations thereon.

II.     **PRELIMINARY INJUNCTION STANDARD**

To obtain a preliminary injunction, Plaintiff must make a clear showing:

    (1)   That it will likely succeed on the merits at trial;

    (2)   That it is likely to be irreparably harmed absent preliminary relief;

    (3)   That the balance of equities tips in its favor; and

    (4)   That an injunction is in the public interest.

<u>Winter v. Natural Resources Defense Council, Inc.</u>, ___ U.S. ___, 129 S.Ct.365, 375-76 (2008); <u>The Real Truth About Obama, Inc. v. Federal Election Commission</u>, 575 F.3d 342 (4th Cir. 2009).

III. <u>DISCUSSION</u>

    A.    <u>Merits</u>

Plaintiff asserts that it is entitled to relief under the Lanham Act, 15 U.S.C. § 1125(a).[3]

In a false designation of origin claim under the Lanham Act, a plaintiff must prove "(1) that it possesses the mark; (2) that the opposing party used the mark; (3) that the opposing party's use of the mark occurred 'in commerce'; (4) that the opposing party used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the opposing party used the mark in a manner likely to confuse consumers." <u>Lamparello v. Falwell</u>, 420 F.3d 309, 313 (4th Cir. 2005) (quoting <u>People for the Ethical Treatment of Animals v. Doughney</u>, 263 F.2d 359, 364 (4th Cir. 2001)).

The Court will assume that Plaintiff can establish the first four elements of its Lanham Act claim.  However, on the current

---

3 Plaintiff also asserts essentially identical claims under state law.

record, there appear to be fairly debatable issues with regard the likelihood of confusion element.

The Fourth Circuit has identified seven factors to be used in determining whether a likelihood of confusion exists as to the source of a work:

(1) The strength or distinctiveness of the mark;

(2) The similarity of the two marks;

(3) The similarity of the goods/services the marks identify;

(4) The similarity of the facilities the two parties use in their businesses;

(5) The similarity of the advertising used by the two parties;

(6) The defendant's intent;

(7) Actual confusion.

Lamparello, 420 F.3d at 314-15 (citing Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)).

In Lamparello, the Fourth Circuit held that the defendant's "gripe" website, www.fallwell.com, did not infringe on the late Reverend Jerry Falwell's trademark rights. 420 F.3d at 318. The holding was based, in part, on the fact that Falwell failed to meet the likelihood of confusion test. The court stated: "Although Lamparello and Reverend Falwell employ similar marks online, Lamparello's website looks nothing like Reverend Falwell's; indeed, Lamparello has made no attempt to imitate Reverend Falwell's

website." Lamparello, 420 F.3d at 315.  The Lamparello court held that the parties did not offer similar goods or services.  The fact that people contacted Reverend Falwell's ministry to complain about the defendant's website did not indicate that the website engendered actual confusion.  Id

On the current record, it appears that Plaintiff has presented evidence that, if viewed as Plaintiff wishes, would permit a reasonable fact finder to conclude that there was a likelihood of confusion.  However, the current record does not establish that a reasonable fact finder would necessarily have to view the evidence as Plaintiff wishes and reach the conclusion that Plaintiff seeks.

As noted, the ultimate determination that there is a likelihood of confusion turns upon consideration of at least seven factors identified by the United States Court of Appeals for the Fourth Circuit in Lamparello.  And, in regard to at least a majority – if not all – of these factors, there appears to be substantial room for debate.  For example, there is room to debate the degree of similarity of the marks, particularly in regard to Hines' identified target audience.  Moreover, there are substantial differences between the parties' respective websites that need to be weighed against the similarities.[4]  And, of course, Callahan's intent and the

---

4 Plaintiff's website has a white and pink background featuring hearts and a small drawing of an African American woman perched on

extent of actual confusion supply ample grist for a fact finder's mill.

In sum, on the current record, it appears that both Plaintiff and Callahan would have reasonable chances to prevail on the merits. The relative probabilities of success, even if viewed as favoring Plaintiff, are not such as to warrant granting it the injunctive relief it seeks by the instant motion.

B. <u>Irreparable Harm</u>

Should Plaintiff ultimately prevail it will be entitled to appropriate injunctive relief, including a prohibition against Callahan's further infringement of its rights. However it has not shown, in the context of the instant case, that it will suffer irreparable harm if the injunctive relief is deferred for the presently estimated four to six months until trial. Callahan

---

top of the words "Funky Brown Chick." An advertisement for an adult toy store is also prominently featured. Plaintiff's posts deal almost exclusively with issues of sex and dating. Recent posts were titled "Confessions From the 'Other Woman'," "Single Women's Affairs: Sleeping With Married Men," and "Is Sexual Tension Better Than Sex?" Defendant's blog has a black, white, and red color scheme and the blog header contains a large black and white photo of an African American woman. The blog title reads "[fung'ke][blak][chik] adj. characterized by originality and modishness; unconventionality." There do not appear to be any advertisements on Defendant's site. Topic links at the top of the website read: Home, About Me, Women, Politics, Beauty, Blog Roll, More, and Contact. Recent posts were titled "Insert Obligatory Black Hair Post," "I Was In The Middle of Writing a Post, But Then Said Fuck It," and "October is Domestic Violence Awareness Month."

already has a disclaimer of connection with Plaintiff on her website. She has agreed, on the record, to post a disclaimer to the effect that her website is not funkybrownchick.com, has no connection to that website and has no connection to Twanna Hines.

### C.  The Equities

A wrongfully denied preliminary injunction would require Plaintiff to endure the detriment flowing from Callahan's activities for some six months, a detriment that can be reduced by virtue of Defendant's disclaimer of connection to Plaintiff.  Plaintiff will, of course, be able to proceed fully with its activities.  In contrast, a wrongfully granted preliminary injunction would require Callahan to have interrupted her operations under the "Funky Black Chick" name for some six months.  The detriment to Callahan from a wrongfully granted preliminary injunction would exceed the detriment to Plaintiff from a wrongfully denied preliminary injunction.

Plaintiff has not shown that the balance of the equities tips in its favor.

### D.  Public Interest

There is no significant public interest that would make it more, or less, appropriate to grant or deny of the preliminary injunction at issue herein.

**E.   Injunctive Relief**

The Court finds it inappropriate to grant Plaintiff preliminary injunctive relief, provided that Callahan posts an appropriate disclaimer on her website and does not unreasonably delay the resolution of the instant case.

**IV.   CONCLUSION**

For the foregoing reasons:

1. Plaintiff's Motion for Preliminary Injunction [Document 16] is DENIED. Defendant shall, however:

    a. Post on her website a disclaimer making clear that her website has no connection with funkybrownchick.com or Twanna Hines.

    b. If Defendant and Plaintiff cannot agree on the wording, placement and other characteristics of the disclaimer, by October 20, 2009, Plaintiff and Defendant shall provide the Court with their respective positions.

2. Defendant shall seek, as expeditiously as possible, to obtain counsel to enter his/her appearance in this case.

    a. Defense counsel shall, promptly upon the entry of appearance, arrange a telephone conference to set the scheduling of further proceedings herein.

    b. If no defense counsel enters his/her appearance by Defendant October 30, 2009, Plaintiff shall arrange

> a telephone conference with Defendant to set the
> scheduling of further proceedings herein.

SO ORDERED, on <u>Tuesday, October 13, 2009</u>.

<u>          /s/          </u><br>
Marvin J. Garbis<br>
United States District Judge